ZACHARIAH ALLEN, Assignee, *v.* PELEG W. GARDINER and others.

The delivery of a release by a creditor to an assignee under a voluntary assignment, who is authorized to receive it for him by the assignor, is equivalent to a delivery of the same to the assignor personally.

The execution of such a release, by delivery on Sunday, is not void under chapter 216, section 16, of the Revised Statutes; not being labor, business, or work *of the ordinary calling* of either of the parties to it, prohibited by that section.

BILL IN EQUITY, filed by Zachariah Allen, assignee of Philip Allen under a voluntary assignment for the benefit of creditors, for instructions, whether he should pay a dividend, under said assignment, to Peleg W. Gardiner, a debtor of said Philip, who claimed to have released him, and thereby to have entitled himself, according to the provisions of the deed, to share in the proceeds of the assigned property.

The bill, answer and proofs are fully stated in the opinion of the court.

*William H. Potter, for the complainant.*

*Thurston, for Peleg W. Gardiner.*

*B. N. Lapham, for the creditors of P. Allen.*

BRAYTON, J. The facts, as they appear from the bills, answers and proofs in this cause, are, briefly,—that Philip Allen, on the 19th day of August, 1859, by his deed of assignment of that date, conveyed to the complainant certain real and personal estate, derived to him from his deceased sister, Ann Allen, in trust, to apply the proceeds of said estates to the payment of their debts to such of his creditors as should, within six months after the death of his sister, Ann Allen, execute and deliver to said

assignor a release of all their demands against him ; that said Ann Allen died on the said 19th day of August, 1859, the day of the execution of said assignment; that the said Peleg W. Gardiner was a creditor of the assignor, and that, on the 19th day of February, 1860, he executed a release to said Philip Allen, of all demands against him, and delivered the same to the said Zachariah Allen on the same day, the said Zachariah having been, by letter of attorney, authorized to receive such releases for the said Philip Allen. The proceeds of the property assigned are insufficient for the payment, in full, of all the creditors of said assignor who have executed releases ; and the other creditors object that the said defendant, Peleg W. Gardiner, is not entitled to receive a dividend out of said proceeds, and that the release was not executed according to the provisions of the deed of assignment. The prayer of the bill is, that the said assignee may be instructed and directed, whether said Gardiner is entitled to share, with the other creditors who have released, in the proceeds of the assigned property.

The objections made against the claim of the said Gardiner by the other releasing creditors are, *first*, that the said release was not delivered to the assignor, personally, within the six months after the decease of the said Ann Allen; and that payment is to be made to such creditors only, as shall, within the words of the condition, " *execute and deliver to me* a good and valid release," &c. ; and that a delivery of such release to another person, for the assignor, is insufficient.

The legal maxim, " *Qui per alium facit per se ipsum facere videtur,*" will dispose of this objection. There is nothing in the language of this provision of the assignment to render this maxim inapplicable. A payment to one having a like authority to receive the money would discharge the debt. The fact that the authority was to receive a release of one does not alter the case.

Another objection to this claim is, that the release executed by Gardiner was void, having been executed on the first day of the week, in violation of the statute which prohibits every person, under a penalty, to " do, or exercise, any labor, or business, or work, of his ordinary calling, on the first day of the week;" " works of necessity or charity only excepted." It is claimed,

that under this act, all business, work or labor, on Sunday, is prohibited, unless it be a work of charity or of necessity ; and that the execution of the release in this case was neither a work of necessity nor of charity.

The adjudged cases in Massachusetts, under the statute of that State, if applicable to the language of ours, might sustain the objection now made, though it has been held, even there, that a promissory note made on Sunday was nevertheless valid. *Greene* v. *Putnam*, 10 Mass. 372. The objection was probably made in view of Massachusetts cases, and under the impression that the statutes of that State and of ours were similar. Their statute prohibits every person from doing " any manner of business or work, (works of necessity or charity excepted,) on the Lord's day ;" so that all work, or labor, or business, whether done in the pursuance of one's ordinary calling, or otherwise, is prohibited. Our statute prohibits only such work or labor as is performed in one's ordinary calling or usual occupation. Rev. St. ch. 216, § 16. This statute is a transcript of the statute 29th of Charles II., § 7, and was passed in the 31st year of the same reign. The English statute has received, by a series of cases, a settled construction, which is, that the act did not intend that every act of business or labor performed on Sunday should be punishable, (works of necessity or charity only excepted,) but that the ordinary, daily occupation of men should be suspended on that day, and that no act in the pursuit of that occupation or calling should be performed, unless called for by some necessity, or motive of charity. In *Drury* v. *Defontaine*, 1 Taunt. 131, the plaintiff was a banker by occupation, and sent his horse to one Hull, who kept a commission stable for the sale of horses by auction, for the purpose of being sold. Hull sold the horse to the defendant, at private sale, on Sunday. It was objected that the sale, being made on Sunday, the contract was void, and the plaintiff could not maintain his action for the price. In this case, Sir James Mansfield said, that " to bring the case within the statute, we must say, that either Drury or Hull worked within their ordinary calling on Sunday. The sale of a horse by private contract was not Drury's ordinary calling, nor was it Hull's. His calling was that of a horse auctioneer, and he was not within his ordinary

Allen, assignee, *v.* Gardiner and others.

calling in selling a horse by private contract;" and the sale was held good. The same construction is given to the statute in *King* v. *Inhabitants of Whitnash*, 7 Barn. & Cr. 596. This was a settlement case, in which the settlement of the pauper was claimed to have been gained by a hiring to service. It was objected that the contract for the service was made on Sunday, and so was, under this statute, void. It was held, that the contract, which was made with a farmer, was not in the course of the ordinary calling of the farmer or of the pauper; and though it was not a work either of necessity or of charity, it was not within the statute, and the contract was valid. In *Walton* v. *Gavin*, 2 Eng. L. & Eq. 153, the question was, whether the plaintiff, Gavin, whose action was for false imprisonment, was legally enlisted. The enlistment was made on Sunday, by a soldier employed in the recruiting service. Lord Campbell says, " the ordinary duty of a soldier is to drill, and to fight the battles of his country, and in no point of view can it be said that the recruiting soldier here was in the exercise of his ordinary calling on Sunday," and cites the preceding case of *King* v. *Inhabitants of Whitnash* as authority. In *Fennell* v. *Ridler*, 5 B. & C. 406, the case was an action upon a warranty of a horse. The plaintiffs were horse-dealers, and the horse was bought on Sunday. Mr. Justice Bayley says, " the purchase of a horse by a horse-dealer is an exercise of the business of his ordinary calling, there can be no doubt. The spirit of the act is, to advance the interests of religion, taking a man's thoughts from his worldly concerns, and to direct them to the duties of piety and religion." There is nothing in the frame of the act to prevent its applying to the case in question. It " does not, indeed, apply to all persons, but to such only as have some ordinary calling;" and he concludes by saying, " that every species of labor, business, or work, whether public or private, in the ordinary calling of a tradesman, artificer, workman, laborer, or other person, is within the prohibition of this statute." *Smith* v. *Sparrow*, 4 Bingh. 84, and *Bloxsome* v. *Williams*, 3 B & C. 232, are to the same point.

The only inquiry in every case, therefore, is, was the business or work done in the course of the ordinary employment of the party? If it was, it is within the statute; otherwise, not.

It does not appear that the execution and delivery of the release in this case was in the course of the ordinary employment or calling of this creditor. It was an act rather out of and beyond the sphere of his ordinary business, as was the assignment itself which required it; and for that reason we think this objection must be overruled. It must be declared, that the said Gardiner is entitled to share, with the other creditors who have executed releases, in the proceeds of said assigned property, in proportion to the amount of his claim.